IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDNA BETH CASEY, ) | |
| ) | |
| Petitioner, ) | Case No. CV 07-183-E-LMB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY ) | **AND ORDER** |
| ADMINISTRATION, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Currently pending before the Court is Edna Beth Casey's Petition for Review of the final decision of the Commissioner of Social Security (Docket No. 1) denying her claims for Social Security disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 301, *et seq*. The Court has jurisdiction over this action under 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**I.**

**ADMINISTRATIVE PROCEEDINGS**

On August 6, 2004, Casey protectively applied for a period of disability and disability insurance benefits under Title II (AR 60-62) and supplemental security income under Title XVI (AR 205-209), alleging disability beginning September 1, 2001, due to hypothyroidism, fibromyalgia, diabetes, high blood pressure, arthritis, chronic obstructive pulmonary disease ("COPD"), scoliosis, and a neurological problem affecting the nerves in her face. (AR 101.) On

**MEMORANDUM DECISION AND ORDER - 1**

February 14, 2006, Casey amended her alleged onset date to March 1, 2003.  (AR 216.)  Casey's applications were denied initially on January 19, 2005, (AR 39) and again upon reconsideration on March 17, 2005.  (AR 31.)

On March 29, 2005, Casey filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  (AR 29.)  The ALJ held a hearing in Idaho Falls on February 14, 2006, at which time Casey, represented by counsel, appeared and testified.  (AR 213, 215-254.)  Also testifying was James J. Grissom, M.A., a vocational expert ("VE").  (AR 254-260.)

At the hearing, Casey testified that in the later part of 2003, she was able to take care of some things around the house, and was able to do quilting, cooking, and baking.  (AR 218.)  She could sit at a desk for thirty minutes at a time and work.  (AR 219.)  She could be on her feet, doing such things as washing dishes, for twenty minutes at a time.  (AR 220.)  She could walk approximately one-half block in ten minutes, but could not walk a full block.  (AR 221.)  She was able to lift a gallon of milk, which is about eight and one-half pounds.  (AR 222.)  She could do some housework, but it was limited to such things as loading the dishwasher.  (AR 222.)  There were certain things she could not get done—like mopping, running a vacuum cleaner, and scrubbing the bathroom—that her sister would come over and do for her.  (AR 222.)  She could be away from home for an hour or two at a time.  (AR 223.)  Her worst symptom was fatigue and exhaustion, but she also had shortness of breath.  (AR 224.)

Casey testified that her symptoms became worse in 2004, and that she started doing less and sleeping more.  (AR 224-226.)  Her symptoms continued to worsen in 2005.  She would take naps in bed for about two hours in the morning and two hours in the afternoon.  (AR 229.)  She could go grocery shopping only occasionally, but only if there was a motor scooter available,

and she could go for only thirty minutes before she needed to go home due to exhaustion.  (AR 230.)  She could walk for five minutes at a time, and stand for five minutes at a time.  (AR 231-232.)  She could still lift a gallon of milk, but could not lift a ten-pound item.  (AR 232.)  She was able to go visit friends for a period of thirty to forty minutes, and was able to attend church for a period of about one and one-half hours.  (AR 233-234.)  Taking a shower and getting dressed exhausted her, and she would need to take a thirty minute nap after getting dressed before leaving home due to the exhaustion.  (AR 241.)  Because it was so exhausting, she did not bother getting dressed three to four days in a week.  (AR 243.)  She had difficulty walking on uneven surfaces, and could climb maybe three stairs before having to take a break.  (AR 245.)

She testified that she suffers from exhaustion, shortness of breath during exertion, type II diabetes, COPD, and hypertension.  (AR 224, 228.)  Her worst symptoms were fatigue and exhaustion.  (AR 251.)  Her next most severe symptoms were shortness of breath (AR 251) and back pain (AR 251.)  Casey argued that the limitations caused by her conditions are so severe that she does not possess the residual functional capacity to maintain gainful employment.  (*See* AR 216-217.)

On June 26, 2006, the ALJ issued a decision denying Casey's claim for benefits.  (AR 15-23.)  The ALJ found that Casey has the following severe impairments: essential hypertension, disorders involving the immune mechanism (non HIV), and obesity.  (AR 17.)  The ALJ further found that, despite these impairments, Casey has the residual functional capacity to perform her past relevant work.  (AR 19-22.)

**MEMORANDUM DECISION AND ORDER - 3**

Casey requested the Appeals Council review the ALJ's decision. (AR 11.) The Appeals Council denied Casey's request on February 23, 2007 (AR 4), making the ALJ's decision the final decision of the Commissioner of Social Security. *See* 20 C.F.R. § 416.1481.

Having exhausted her administrative remedies, Casey timely filed this instant action, arguing that the ALJ improperly rejected Casey's testimony and lay witnesses' statements regarding the severity of Casey's impairments and limitations. *Petitioner's Brief*, pp. 7-11 (Docket Nos. 15, 16).

## II.

## STANDARD OF REVIEW

This Court reviews the Commissioner's final decision under the substantial evidence standard. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). Under this standard, the Commissioner's decision must be upheld unless it is based on legal error or is not supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Stout*, 454 F.3d at 1052.

"'Substantial evidence' means more than a scintilla, but less than a preponderance, i.e. such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, in reviewing the Commissioner's decision, this "court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882.

**MEMORANDUM DECISION AND ORDER - 4**

### III.

### SEQUENTIAL PROCESS

When evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process to determine whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997). The first step in this sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the answer is in the affirmative, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present action, the ALJ concluded that Casey has not engaged in substantial gainful activity at any time relevant to the decision. (AR 17.)

The second step in the evaluation process requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Here, the ALJ found that Casey has the following severe impairments: essential hypertension, disorders involving the immune mechanism (non HIV), and obesity. (AR 17.)

The third step in the process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ found that Casey's severe impairments do not meet or equal any of the listed impairments. (AR 19.)

**MEMORANDUM DECISION AND ORDER - 5**

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(ii).  Here, the ALJ concluded that Casey is able to perform her past relevant work as a payroll clerk and an accounts payable clerk. (AR 22.)  The ALJ accordingly concluded that Casey had not been under a "disability" as defined in the Social Security Act during the relevant time period, and found it unnecessary to proceed to the fifth and final step of the sequential evaluation process.  (AR 22.)

## IV.

## DISCUSSION

In determining that Casey was not disabled, the ALJ rejected both Casey's testimony regarding the severity of her symptoms, and lay witnesses' statements submitted by Casey in support of her claim.  Casey argues that the ALJ's rejection of this evidence is not supported by substantial evidence.  The Court agrees.

**A.     Casey's Credibility**

To decide whether to accept a claimant's subjective symptom testimony, an ALJ must perform a two-step analysis.  In the first step, the ALJ must determine whether the claimant has presented subjective medical evidence of an underlying impairment that could reasonably be expected to produce the symptom alleged.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  If the claimant meets the first step, the ALJ must move on to the second step and determine whether claimant's subjective testimony is credible.  *See id.* at 1036.  In this second step, unless there is evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing

**MEMORANDUM DECISION AND ORDER - 6**

reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). To fulfill this requirement, the ALJ must state "specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

It is uncontradicted that Casey met the first step of this two-step analysis. As found by the ALJ, Casey submitted objective medical evidence of underlying impairments that could reasonably be expected to produce the symptoms alleged. (*See* AR 21.)

In the second step of the analysis, the ALJ rejected Casey's testimony regarding the severity of her symptoms, finding her testimony to be "not entirely credible." (*See* AR 21.) The ALJ did not, however, find that Casey was malingering, and there is no evidence suggesting she was. The ALJ was therefore required to set forth specific, clear, and convincing reasons for rejecting Casey's testimony. *See Lingenfelter*, 504 F.3d at 1036. The ALJ failed to fulfill this requirement.

The ALJ found that Casey had "described an extremely limited life-style and even if her daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition in view of the relatively weak medical evidence." (AR 21.) However, the mere lack of, or weakness of, objective medical evidence to support a claimant's testimony regarding the severity of her symptoms is not a sufficient basis for rejecting that testimony. *See Robbins*, 466 F.3d at 884; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ noted that the record establishes Casey's difficult-to-control hypertension, decreased breath sounds, and muscle tenderness, but found that Casey's "cardiac work-up,

**MEMORANDUM DECISION AND ORDER - 7**

physical and neurological examinations have all been within normal limits." (AR 21.) However, the evidence in the record establishes that Casey was unable to complete a stress test in December 2003 due to her inability to walk for the required six minute time period (she was able only to walk for three minutes), and that the results of the not-completed test showed "some abnormalities" and very poor exercise tolerance. (AR 146-147, *see* AR 190.)

The ALJ found that Casey "has alleged her back and knee pain also prevents her from working," but that there is no evidence of any muscle wasting or weakness or significant restrictions in range of motion. (AR 21.) Casey did not, however, claim that the back and knee pain she suffered were disabling. (*See* AR 101.) Further, there is no evidence in the record that back and knee pain cannot exist without muscle wasting, weakness, or significant restrictions in range of motion.

The ALJ noted that Casey testified that she uses a cane for balance, did not use an assistive device in December 2003, and that an examination in January 2005 indicated that her coordination was good. (AR 21.) The ALJ found that there was therefore nothing in the record demonstrating that Casey requires a cane in order to ambulate effectively. (AR 21.) Casey did not, however, claim that her ambulation or problems with balance were disabling. (*See* AR 101.)

The reasons stated by the ALJ for rejecting Casey's testimony regarding the severity of her symptoms are not specific, clear, and convincing. The Court therefore holds that substantial evidence does not support the ALJ's decision.

**B.     Lay Witness Statements**

Casey submitted witness statements from her sister, Lynn Klein (AR 109-10); her husband, Anthony Casey (AR 111); friends Carolyn Tanner (AR 112) and Debra Sadek (AR

**MEMORANDUM DECISION AND ORDER - 8**

114); and her daughter (AR 115).  These statements were consistent regarding the symptoms of fatigue, exhaustion, and shortness of breath that the witnesses had observed in Casey.  These statements also were consistent with Casey's testimony regarding the severity of her symptoms.  Further, the record demonstrates that the statements were based on the witnesses' own observations of Casey.

The ALJ rejected the witnesses' statements "because they are subjective and not based on objective clinical and laboratory findings, and there is simply virtually no medical evidence to support their allegations or the allegations of the claimant."  (AR 21.)

This reason for rejecting the lay witnesses' statements is not "germane to each witness" and does not, therefore, provide substantial evidence to support the ALJ's decision.  *See Schow v. Astrue*, No. 05-35973, – F.3d –, 2008 WL 1696954, at *4 (9th Cir. Apr. 8, 2008) (holding that ALJ erred in rejecting lay witness observations where ALJ failed to provide reasons that were germane to each witness); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount testimony of the lay witnesses, he must give reasons that are germane to each witness.").

## V.

## CONCLUSION

The Court concludes that the Commissioner's determination that Casey is not disabled within the meaning of the Social Security Act is not supported by substantial evidence in the record.  Accordingly, the Court will grant Casey's request for review and remand this matter for further proceedings.  Although Casey has requested the Court award her benefits, the Court

**MEMORANDUM DECISION AND ORDER - 9**

declines to grant such relief because further development of the record in this matter is necessary.[1]

## VI.

## ORDER

Based on the foregoing, Casey's request for review is GRANTED. The Commissioner's decision that Casey is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: **July 11, 2008**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

---

[1] Because the Court is remanding this matter for further development of the record, it need not address the additional arguments raised by Casey.

**MEMORANDUM DECISION AND ORDER - 10**